IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THE PET STOP PROFESSIONAL PET SITTING SERVICE, LLC, an Oregon limited liability company, | CV-07-90-ST |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| THE PROFESSIONAL PET-SITTING SERVICE, INC., an Oregon corporation, THOMAS GENNARELLI, an individual, and KIMBERLEE GENNARELLI, an individual, | |
| Defendants. | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, The Pet Stop Professional Pet Sitting Service, LLC ("The Pet Stop"), an Oregon limited liability company with its principal place of business in Oregon, is owned by Michelle and Patrick Sheehan. The Pet Stop provides in-home pet sitting services in Salem, Oregon.

1 - FINDINGS AND RECOMMENDATION

Defendant, Professional Pet-Sitting Services, Inc. ("PPSS"), an Oregon corporation with its principal place of business in Oregon, also provides in-home pet sitting services in Salem, Oregon. Defendants Tom and Kimberlee Gennarelli are PPSS shareholders.

On March 20, 2007, The Pet Stop filed a First Amended Complaint against defendants alleging claims of trademark infringement (First Claim for Relief) and trade dress infringement (Second Claim for Relief) in violation of 15 USC § 1125, misappropriation of trade secrets in violation of ORS 646.463 and 646.465 (Third Claim for Relief), and unfair trade practices in violation of ORS 646.608 (Fourth Claim for Relief). The Pet Stop seeks a preliminary and permanent injunction, damages, attorney fees and costs. The First Amended Complaint alleges that this court has jurisdiction over the federal trademark and trade dress infringement claims under 28 USC §§ 1331 and 1338 and supplemental jurisdiction over the state law claims under 28 USC § 1367.

Defendants have filed a Motion to Dismiss (docket # 11), contending that this court lacks jurisdiction over the First and Second Claims and, therefore, lacks supplemental jurisdiction over the Third and Fourth Claims. For the reasons that follow, defendants' motion should be denied.

## **ALLEGATIONS**

The Pet Stop alleges that it has used the marks THE PET STOP and THE PET STOP PROFESSIONAL to describe its business and services since June 2001 and developed goodwill in the marks which customers recognize in Salem, Oregon. First Amended Complaint, ¶ 7. The Pet Stop's trade dress included a specially decorated Volkswagon Beetle. *Id*, ¶ 11.

In or about June 2006, the Sheehans began negotiations to sell The Pet Stop to the Gennarellis and shared a prospectus outlining their business and past profit/loss statements. *Id*,

¶¶ 8-9. The Sheehans eventually reached an agreement to sell The Pet Stop, including its marks and trade dress, to the Gennarellis for $50,000. *Id*, ¶¶ 10-11. The Gennarellis agreed to make a down payment of $35,000 and pay the remaining $15,000 in $1,000 monthly installments over 15 months. *Id*, ¶ 10. The sale was set to occur on January 1, 2007, with formal contracts signed shortly before that date. *Id*. The Sheehans agreed to dissolve The Pet Stop and the Gennarellis agreed to use their own corporate structure, if any, to continue running The Pet Stop business. *Id*, ¶ 12.

As part of the purchase agreement and to make a smooth transition, The Pet Stop shared with the Gennarellis its business plan, operating procedures, names and contact information for its independent contractors and clients, all of which constituted its trade secrets. *Id*, ¶ 13. The Gennarellis paid a $5,000 good faith deposit in July 2006 and formed PPSS on October 18, 2006. *Id*, ¶ 14.

In November 2006, the Gennarellis terminated further efforts to consummate the purchase agreement and demanded return of their deposit. *Id*, ¶ 15. The Pet Stop returned the Gennarellis' deposit. *Id*.

The Gennarellis began contacting The Pet Stop's customers. *Id*, ¶ 16. PPSS uses the domain name "petstoppros.com" as its website, petstoppros@aol.com as its email address, and PET STOP PROS as a trade name in Salem, Oregon, which is confusing to The Pet Stop's customers, potential customers, and the community at large. *Id*, ¶ 16. Defendants also use in their business two vehicles on which marketing materials are placed that is confusingly similar to The Pet Stop's Volkswagon Beetle. *Id*, ¶ 17. In addition, PPSS has used The Pet Stop's

3 - FINDINGS AND RECOMMENDATION

business information and business plan to create its own business to compete with The Pet Stop. *Id*, ¶ 18.

## FINDINGS

Defendants first seek dismissal on the basis that The Pet Stop's alleged trademarks and trade dress are neither registered nor subject to registration. This argument does not directly attack this court's lack of subject matter jurisdiction under FRCP 12(b)(1), but instead seeks dismissal of the First and Second Claims for failure to state a claim under FRCP 12(b)(6).[1]

Alternatively, defendants argue that the First Amended Complaint fails to allege any facts demonstrating an impact on interstate commerce. Since this argument presents a direct attack on this court's subject matter jurisdiction over the federal infringement claims, it must be addressed first. *Steel Co. v. Citizens for a Better Env't*, 523 US 83, 95 (1998) (jurisdictional questions ordinarily must precede merits determinations in dispositional order).

### I.   Subject Matter Jurisdiction

Under 28 USC § 1338, this court has jurisdiction over an "Act of Congress relating to . . . trademarks." The relevant "Act of Congress" here is the Lanham Act, 15 USC §§ 1051 *et seq.*, which provides remedies for the owners of rights in trademarks and trade dress against those who infringe upon the rights by "use in commerce" in a way that is likely to confuse or deceive consumers. The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 USC § 1127.

---

[1] Granting of this motion would, however, affect jurisdiction over the remaining state law claims. When "the district court has dismissed all claims over which it has original jurisdiction," it has discretion to "decline to exercise" supplemental jurisdiction. 28 USC §1367(c)(3); *Brady v. Brown*, 51 F3d 810, 816 (9th Cir 1994) (citation omitted).

Claims arising out of "purely intrastate disputes" are not subject to the Lanham Act because they do not fall within the Commerce Clause. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F2d 833, 838 (11th Cir 1983), citing *Iding v. Anaston*, 266 F Supp 1015, 1019 (ND Ill 1967). However, the definition of "commerce" within the Lanham Act has been interpreted liberally to include those intrastate activities which "could affect . . . commerce which Congress can regulate." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F2d 117, 120 (9th Cir), *cert denied by* 391 US 966 (1968). Intrastate activity can be regulated if it is "sufficiently substantial and adverse to Congress' paramount policy declared in the Act . . ." *Id* (internal quotation marks and citations omitted).

The First Amended Complaint alleges the existence of The Pet Stop's protected trademarks and trade dress and also alleges that defendants' alleged infringing conduct "is in interstate commerce and/or has an effect on interstate commerce." First Amended Complaint, ¶ 22. Defendants' alleged conduct includes using the domain name "petstoppros.com" and email address petstoppros@aol.com, as well as contacting The Pet Stop's customers and using two vehicles with confusingly similar marketing materials. *Id*, ¶¶ 16-17.

Defendants argue that The Pet Stop operates only an intrastate business and does not allege facts supporting its conclusory allegation that defendants' conduct is in interstate commerce or has affected interstate commerce. They compare the allegations in the First Amended Complaint to those in *Duncan v. Stuetzle*, 76 F3d 1480, 1488 n12 (9th Cir 1984), in which the plaintiff claimed that the defendant, who had previously sought to purchase or become a distributor for the plaintiff's foot massage machines, had misappropriated confidential information by leasing similar products to third parties. The plaintiff alleged that it had created a

5 - FINDINGS AND RECOMMENDATION

consumer demand for its product "within the State of California," that its product had become widely known "within the State," and that defendant began manufacturing and distributing reproductions of plaintiffs' products within Southern California. *Id* at 1488, n12. The court held that these allegations, absent an explicit reference anywhere in the Complaint to implicate interstate commerce, did not state a claim under the Lanham Act. Similarly, defendants point out that both parties in this case are Oregon businesses which provide in-home pet sitting services in Salem, Oregon. All alleged impact or harm appears to have occurred within the community in Salem, Oregon, where customers allegedly recognize The Pet Stop's name and have been confused by PPSS' name.

In response, The Pet Stop relies on other cases outside this jurisdiction to contend that the use of a party's mark as a domain name on the internet is unquestionably a "use in commerce." *See OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F Supp2d 176, 186 (WD NY 2000)*; Laurel Capital Group, Inc. v. BT Fin. Corp.*, 45 F Supp2d 469, 479 (WD Pa 1999); *Maritz, Inc. v. Cybergold, Inc.*, 947 F Supp 1328, 1335 (ED Mo 1996); *Intermatic Inc. v. Toeppen*, 947 F Supp 1227, 1239-40 (ND Ill 1996). However, none of these cases involve the inherently local nature of the two businesses involved here.

In *Intermatic, Inc.*, 947 F Supp at 1233, the plaintiff was a national corporation with 37 offices throughout the United States, while defendant was a "cyber-squatter"[2] who had entered Intermatic's registered trademark as a domain name. The services at issue in *Maritz, Inc.*, 947 F Supp at 1335, were solely internet-based (signing up customers to a mailing list and presenting its

---

[2] Cyber-squatters are individuals who "attempt to profit from the Internet by reserving and later reselling or licensing domain names back to the companies that spent millions of dollars developing the goodwill of the trademark." *Intermatic, Inc.*, 947 F Supp at 1233.

6 - FINDINGS AND RECOMMENDATION

upcoming services of sending the users advertisements which match their selected interests and charging advertisers money). In addition, that court was faced with the issue of whether personal jurisdiction existed under a state long-arm statute.

*OHB, Inc.*, 86 F Supp2d at 185-86, involved competing apartment rental guides for Western and Central New York, the defendant's operation of a website parodying the plaintiff's website, and the defendant's use of the plaintiffs' registered trademark in its domain name. The court gave three reasons why the "use in commerce" requirement was met. The first reason was a hyperlink in defendant's website which connected users to an on-line version of its rental guide. However, the court failed to explain why this activity constitutes a "use in commerce." The second reason was the "national, and even international, nature of the Internet itself" for which the court cited two cases, *Intermatic* and *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313 (SDNY March 24, 1997), *aff'd* 152 F3d 920 (2nd Cir), *cert denied*, 525 US 834 (1998). *Id* at 186. However, neither of those cases support such a broad proposition. As noted above, *Intermatic* involved a national corporation, and *Planned Parenthood Fed'n of Am., Inc.*, clearly involved out-of-state use of a mark. As a third reason, the court stated that defendant's "use of plaintiffs' trademark constitute[s] a 'use in commerce' as it affects plaintiffs' ability to offer their services in commerce." *Id*. As discussed below, a trademark can be registered only if it has been used "in commerce." In contrast, The Pet Stop does not have a registered trademark.

The closest case factually is *Laurel*, 45 F Supp2d at 479, which involved two Pennsylvania-based banks. Given defendant's use of the mark on a website promoting its banking services, the court found that the nature of the internet itself makes it a use "in commerce." In reaching this conclusion, the court relied on *Intermatic* and *Planned Parenthood*

7 - FINDINGS AND RECOMMENDATION

*Fed'n., Inc.,* the same cases relied upon by *OHB, Inc.* As explained above, both of those cases clearly involved national activities. Furthermore, other factors led to the conclusion that the mark had been used "in commerce:" the defendant bank had at least 40 bank accounts held by customers who resided outside of Pennsylvania; plaintiff also boasted a "significant" number of out-of-state customers; and both parties advertised in a newspaper that had some (albeit limited) out-of-state distribution.

This court is unprepared to go as far as *OHB, Inc.* and *Laurel* to find that *any* potentially infringing use of a trademark by a defendant on a website constitutes "use in commerce" under the Lanham Act. While the internet has revolutionized the reach of previously local businesses, propelling them onto the national scene, here both The Pet Stop and PPSS are inherently local, offering home-based dog-sitting services *only* in the Salem, Oregon area. Although an infringing use of trademark on the internet combined with other factors may well implicate interstate commerce, the First Amended Complaint does not allege any such factors.

To boost its jurisdictional allegations, The Pet Stop takes another tack by arguing that it has used and advertised its marks and operated its business in interstate, as well as intrastate, commerce. If so, then defendants' alleged infringement of its marks would affect interstate commerce. To that end, it has submitted evidence outside the pleadings. To evaluate a motion to dismiss for lack of jurisdiction, the court may consider extrinsic evidence and resolve factual disputes where necessary. *Roberts v. Corrothers*, 812 F2d 1173, 1177 (9th Cir 1987). In that situation, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claim." *Id*, citing *Augustine v. United States*, 704 F2d 1077 (9th Cir 1983).

However, if the question of jurisdiction is dependent on the resolution of factual issues going to the merits, then, in the absence of an evidentiary hearing, disputes in the facts are viewed in the light most favorable to the opposing party, similar to adjudicating a summary judgment motion. *Dreier v. United States*, 704 F2d 1074, 1077 (9th Cir 1983).  In other words, the court "assumes the truth of allegations in a complaint or habeas petition, unless controverted by undisputed facts in the record." *Roberts*, 812 F2d at 1177.  Dismissal is then appropriate if the factual allegations do not raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, – US –, 127 S Ct 1955 (2007).  This standard from FRCP 12(b)(6) motions applies equally to motions challenging subject matter jurisdiction contingent upon disputed facts. *Calhoun v. United States*, 475 F Supp 1, 3 (SD Cal 1977), *aff'd and adopted by* 604 F2d 647 (9th Cir 1979) (*per curiam*), *cert denied by* 444 US 1078 (1980).[3]

According to the extrinsic evidence, The Pet Stop regularly contacts customers by telephone and email when they are traveling out-of-state and out-of-country to keep them updated on the status of their pets. Declaration of Michelle C. Sheehan, ¶ 3.  It is a member of a pet sitters' organization, Pet Sitters International ("PSI"), through which it has paid to have its name and services advertised since 2001. *Id*, ¶ 4.  PSI is located in North Carolina and it has a website referral service. *Id*.  The Pet Stop has used other internet referral services and pays for "key words" for internet search engines, such as Google. *Id*, ¶¶ 5-6.  The Pet Stop also advertises and has advertised through general business websites in the Salem area. *Id*, ¶ 7.  This national and local advertising on the internet has resulted in numerous clients and potential customers,

---

[3] *Calhoun* was referring to the previous FRCP 12(b)(6) standard, adopted in *Conley v. Gibson*, 355 US 41, 45-46 (1957), which was recently abrogated by *Bell Atl. Corp.*.  However, the idea remains the same: when issues of subject matter jurisdiction and substance are intertwined, the FRCP 12(b)(6) standard applies to motions challenging subject matter jurisdiction.

both within and outside Oregon. *Id*, ¶¶ 8-9. One customer was moving from Wisconsin and another was moving from Idaho, both of whom located The Pet Stop through Google. *Id*. Another customer originally from Indiana also located The Pet Stop through the internet. *Id*. The Pet Stop has also sent informational packages to potential customers in various locations outside Oregon. *Id*.

In response, defendants counter that The Pet Stop has not sufficiently demonstrated the use of its alleged marks in interstate commerce because it submitted only one supporting exhibit, namely the printout of the PSI website. However, The Pet Stop also has submitted the Declaration of Michelle Sheehan which describes its national advertising and out-of-state customers.

Defendants also argue that The Pet Stop's evidence merely points to use of a full corporate trade name, as opposed to an abridged mark, in interstate commerce. A term used only as a trade name cannot be registered unless it is also used in a trademark or service mark sense. *In re Univar Corp.*, 20 USPQ2d 1865 (TTAB 1991). Defendants rely on *McCarthy on Trademarks and Unfair Competition*, § 9:15 (2006), to contend that if "a corporate name is used in full with its address on letterheads and advertising, it is probably not being used in a service mark sense" and that the inclusion of an "LLC" designator is a factor strongly indicating a trade name use only.

The cases analyzed in *McCarthy* illustrate that such a determination is highly fact specific and turns on whether the full corporate name was used, whether the type size and style is different, and its impact on purchasers. For example, *In re Maguire*, 122 USPQ 398 (TTAB 1959), refused to find that the term "Southern" was a service mark when the usage on letterheads

and bills was "Southern X-Ray Equipment Co.," followed by an address, and when the term Southern was never used on its own. *In re Univar Corp.*, 20 USPQ2d 1865 at * 4, held that the word "UNIVAR" was a trademark and a service mark despite being preceded by the words "a subsidiary of" where the "applicant has not used its full corporate name nor has it merely capitalized the name or utilized it in the same style of lettering," and "UNIVAR" appears "in a significantly bolder, larger and distinctively different style of type, without the designation 'Corporation,' and is often displayed in a contrasting color." *In re Signal Cos.*, 228 USPQ 956 (TTAB 1986), held that the slogan "ONE OF THE SIGNAL COMPANIES" in small print under the address and phone number of Signal Capital Corporation was not a service mark because this use was no different than the typical use of a corporation's name to identify the company, not the service.

If a "company name, or portion of that name in connection with the sale and advertising of services so as to create a commercial impression separate from the name, then this is evidence of probable service mark usage." *McCarthy*, § 9-15, citing *Ex parte Little Studio, Inc.*, 111 USPQ 224 (Comm'r Pat. 1956).  The evidence submitted here shows that the name "The Pet Stop" on the company's website was highly visible in the corner of the page, in bold, in a different lettering style, in much larger letters and above the rest of the company's full name. The visual effect of the position, style and size of "The Pet Stop" is sufficient to create a genuine issue of material fact as to whether it is separate mark from the company's full name.

In the alternative, defendants contend that The Pet Stop's use of its marks amounts to nothing more than *de minimis* activities in interstate commerce.  Although *intrastate* activity falls under the Lanham Act only if it is "sufficiently substantial and adverse to Congress' paramount

11 - FINDINGS AND RECOMMENDATION

policy declared in the Act . . .," *Maier Brewing Co.*, 390 F2d at 120 (internal quotation marks and citations omitted), defendants have cited no authority for the proposition that limited *interstate* use of a mark is not covered under the Act. A "token" use of a mark in interstate commerce is not a sufficient "*bona fide*" use under 15 USC § 1127 to reserve a mark for registration. *See, e.g. Chance v. Pac-Tel Teletrac Inc.*, 242 F3d 1151, 1156-58 (9th Cir 2001). However, that concern is not present here where The Pet Stop has continuously used its marks, and defendants have not challenged the reason behind their use. In the context of advertising, some courts have found that even limited interstate advertising is a factor in favor of meeting the "in commerce" requirement. *See Laurel*, 45 F Supp2d at 479 (advertising in Pennsylvania newspaper that has some limited circulation across the state line); *Mother Waddles Perpetual Motion, Inc. v. Frazier*, 904 F Supp 603, 611 (ED Mich 1995) (advertising on radio stations broadcasting outside Michigan to parts of Ohio and Canada). Absent any legal authority to support defendants' argument, the *de minimis* argument must be rejected.

Here the issue of "use in commerce" is both a requirement for jurisdiction under the Lanham Act and, as discussed below, an element of the substantive claim. Since The Pet Stop may be able to prove a set of facts establishing the use of its marks in interstate commerce in support of its Lanham Act claims entitling it to both jurisdiction and relief, this court should assume subject matter jurisdiction and later resolve the disputed facts which go the merits. Therefore, defendants' motion to dismiss on this ground should be denied.

///

///

///

**II.    Failure to State a Claim**

12 - FINDINGS AND RECOMMENDATION

Since this court should retain jurisdiction at this juncture, it must address defendants' alternative argument that the First and Second Claims fail to state claims upon which relief can be granted.

### A. "In Commerce" Requirement

As defendants correctly note, The Pet Stop does not allege that its trademarks and trade dress at issue are registered, that it has a pending application for registration, or that its trademarks or trade dress are capable of being registered. However, trademarks and trade dress need not be registered in order to receive the protection of § 43(a) of the Lanham Act, 15 USC § 1125,[4] which "protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763, 768, *reh'g denied by* 505 US 1244 (1992) (citations omitted); *see also Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F3d 1042, 1047 n7 (9th Cir 1998) (citation omitted) ("[r]egistration is not a prerequisite for protection under § 43(a), but "courts look to the general principles qualifying a mark for registration under § 2 [of the Lanham Act] when determining whether an unregistered mark is protectable under § 43(a)") (citation omitted).

The Pet Stop concedes that to state a claim of trademark and trade dress infringement in violation of 15 USC § 1125, its unregistered trademarks or trade dress must be qualified for registration. A prerequisite of a federal trademark or trade dress registration is a verified statement that the mark is in use "in commerce." 15 USC § 1051(a)(3)(C). Thus, a qualifying unregistered trademark or trade dress is one that *can* be registered because it has been used "in

---

[4] While defendants cite to 15 USC § 1114 (§ 32 of the Lanham Act), the First Amended Complaint refers to 15 USC § 1125 (§ 43(a) of the Lanham Act). The difference is important as "[s]ection 43(a) prohibits a 'broader range of practices than does § 32,' which applies to registered marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763, 767-68 (1992) (citation omitted).

13 - FINDINGS AND RECOMMENDATION

commerce." Defendants contend that The Pet Stop's unregistered trademarks or trade dress cannot satisfy that requirement. This is the same factual dispute on which jurisdiction rests, as discussed above, and cannot be resolved on a motion to dismiss.

### B. Descriptive Marks

Even if the marks THE PET STOP and THE PET STOP PROFESSIONAL have been used "in commerce," defendants also argue that they may be merely descriptive, further weighing against possible registration. Under 15 USC § 1052, "the mark must be capable of distinguishing the applicant's goods from those of others." *Two Pesos*, *Inc.*, 505 US at 768. Lanham Act protection may be afforded if the mark is either inherently distinctive or it has acquired "secondary meaning." *Id* at 768-69. In general, generic or descriptive marks are not protected under § 43(a) because they are not inherently distinctive. *Id* at 769; 15 USC § 1052(e). However, "descriptive marks may acquire the distinctiveness which will allow them to be protected under the Act." *Two Pesos, Inc.*, 505 US at 769.

The Pet Stop alleges facts describing the length, manner, and type of use of its mark, and avers both that it is first user of the mark and that the mark has acquired secondary meaning. First Amended Complaint, ¶¶ 3, 7, 11, 23. "Whether a mark is generic is a question of fact" which cannot be decided on a motion to dismiss. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F3d 832, 840 (9th Cir 2001) (citation omitted). Therefore, the motion to dismiss on this ground and should be denied.

///

///

## RECOMMENDATION

14 - FINDINGS AND RECOMMENDATION

For the reasons stated above, defendants' Motion to Dismiss (docket # 11) should be DENIED.

## **SCHEDULING ORDER**

Objections to this Findings and Recommendation, if any, are due **June 22, 2007.** If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district judge and go under advisement.

DATED this 5th of June, 2007.

/s/ Janice M. Stewart\_\_\_\_\_
Janice M. Stewart
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION